UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| GARETH FALCONER, | § | |
| | § | |
|      Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 4:11-CV-373 |
| | § | |
| LEHIGH HANSON, INC., *et al*, | § | |
| | § | |
|      Defendants. | § | |

## OPINION AND ORDER

Pending before the Court is Defendants' Motion to Reconsider Reinstatement of Case (Doc. 10) filed by Lehigh Hanson, Inc. and Campbell Concrete & Materials, L.P. (collectively, "the Company"). Plaintiff Gareth Falconer ("Falconer") filed a response (Doc. 12) in opposition to the motion, and Defendants filed a reply (Doc. 13) in support.

Having considered the pleadings, the record in this case, and the applicable law, the Court concludes that the motion should be granted and Falconer's case dismissed.

## I.    Background

Falconer first filed his Complaint (Doc. 1) in this Court on January 27, 2011. According to that document, Falconer's employment with the Company was terminated on March 22, 2010. (Doc. 1 at 3-4). In early October 2010, Falconer filed a formal charge against the Company with the Equal Employment Opportunity Commission (EEOC), and, on October 25, 2010, the EEOC issued a right-to-sue letter. (Doc. 1 at 4). Falconer then filed his pro se complaint in this Court, stating causes of action for (i) wrongful termination, (ii) FMLA retaliation, and (iii) worker's compensation retaliation. Although not disclosed at the time, that "pro se" complaint was

actually drafted by suspended attorney, Michael L. Barnes ("Barnes"). (Barnes Aff. ¶ 5, Sep. 14, 2012, Doc. 5 Ex. A).

After such filing, however, Falconer failed to prosecute his case. He did not comply with two court orders, failing to appear for initial conferences on May 5, 2011 (*see* Order, Jan. 27, 2011, Doc. 2) and August 24, 2011 (*see* Notice of Setting, Doc. 3). Because Falconer never effected service of process, the Company did not make an appearance either. Therefore, on September 15, 2011, the Court issued an order dismissing Falconer's case without prejudice. (Doc. 4).

Unbeknownst to this Court, on November 14, 2011, Falconer refiled exactly the same complaint in the Southern District of Texas, resulting in the opening of another case before Judge Keith P. Ellison. (*See Falconer v. LeHigh Hanson, Inc.* (*Falconer II*), No. H-11-3991 (S.D. Tex. Mar. 30, 2012)). Falconer then attempted to pay his filing fee with a check drafted in Barnes' name, but that check was returned for nonsufficient funds on November 30, 2011. (Filing Fee Entry, *Falconer II*, No. H-11-3991). When Falconer failed to remedy this deficiency, his claims were again dismissed without prejudice. (Order of Dismissal, *Falconer II*, No. H-11-3991). Falconer took no further action in that case.

On September 14, 2012, precisely 364 days after issuance of this Court's Order of Dismissal, Falconer filed a sworn Motion to Reinstate Case (Doc. 5). Based on Falconer's claimed status as a pro se plaintiff and his statement that, because of his employment and medical situation, "effectively no further action [was] taken on the cause," (Doc. 5 at 1, 4), this Court made a finding of excusable neglect and reinstated this case. (Order, Dec. 3, 2012, Doc. 6). As the Company still had not been served, it was unable at the time to pose any opposition to Falconer's motion. Now, having been served, the Company has submitted its motion for

reconsideration, arguing that the order granting reinstatement was unfairly obtained due to Falconer's misrepresentation of the true situation.

## II.    Legal Standard

A court, in its discretion, may relieve a party from an order or final judgment for, among other reasons, that party's excusable neglect or the opposing party's fraud, misrepresentation, or misconduct. Fed. R. Civ. P. 60(b).

The determination of excusable neglect under Rule 60(b)(1) is "an equitable one, taking account of all relevant circumstances surrounding the party's omission." *Bynum v. Ussin*, 410 F. App'x 808, 810 (5th Cir. 2011) (quoting *Pioneer Inv. Servs. Co. v. Brunswick Assocs.*, 507 U.S. 380, 395 (1993)) (internal quotation marks omitted). "These circumstances include the risk of prejudice to the non-movant; the length of delay; the reason for the delay, including whether it was within the reasonable control of the movant; and whether the movant acted in good faith." *Id.* (citing *Pioneer*, 507 U.S. at 395). Not every case requires a rigorous analysis of every factor, and in some cases, one salient circumstance will prove dispositive. *Silvercreek Mgmt. v. Banc of Am. Sec., LLC*, 534 F.3d 469, 472 (5th Cir. 2008).

Rule 60(b)(3) governs instances of fraud, misrepresentation, and misconduct, defined generally as "some purposeful behavior on the part of a party, undertaken for the sake of gaining an unfair advantage." *Fackelman v. Bell*, 564 F.2d 734, 737 (5th Cir. 1977). The moving party must show by clear and convincing evidence that (1) the opposing party engaged in such behavior and (2) this behavior prevented the moving party from fully and fairly presenting its case. *Hesling v. CSX Transp., Inc.*, 396 F.3d 632, 641 (5th Cir. 2005). This rule is remedial in nature, affording relief from orders that were "unfairly obtained," and should be liberally construed. *Id.*

Motions under both Rule 60(b)(1) and Rule 60(b)(3) must be made "within a reasonable time" and will be granted only if there are "unique or sufficiently unusual circumstances" to justify such relief. *Pryor v. U.S. Postal Serv.*, 769 F.2d 281, 287-88 & n.5 (5th Cir. 1985). Whether these standards of reasonableness and uniqueness are satisfied must be determined on a case-by-case basis. *Osborne v. Homeside Lending, Inc.* (*In re Osborne*), 379 F.3d 277, 283 (5th Cir. 2004). "What constitutes 'reasonable time' depends upon the facts of each case, taking into consideration the interest in finality, the reason for delay, the practical ability of the litigant to learn earlier of the grounds relied upon, and prejudice to other parties." *Id.* (quoting *Ashford v. Steuart*, 657 F.2d 1053, 1055 (9th Cir. 1981)) (internal quotation marks omitted).

## III.    Discussion

The Court is faced, in essence, with dueling Rule 60(b) motions: first, Falconer sought and obtained a court order reinstating his case for the reason of excusable neglect; now, the Company seeks relief from that order, arguing that it was unfairly obtained. To succeed, the Company must show that Falconer engaged in fraud, misrepresentation, or misconduct that prevented the Company from fully and fairly arguing its case.

The starting point of this analysis is Falconer's sworn motion to reinstate this case, where he explained that his unemployment, medical disability, and pro se status prevented him from prosecuting the case after filing the complaint. Falconer stated that "[t]here was effectively no further action taken on the cause for the next nine months" and that "there has been no substantive activity in the case; the filed cause has merely laid [sic] dormant in the clerk's office." (Doc. 5 at 1, 4). Relying on Falconer's sworn statements and his pro se status, this Court granted his motion for relief on the basis of excusable neglect.

Now that the complete record is before the Court, however, it is clear that those statements misrepresented the full reality of the situation. Falconer did not, as he argues, merely commit "excusable neglect in his failure to diligently prosecute his case." (Doc. 5 at 3). On the contrary, he employed intentional delay tactics in willful violation of court orders and federal procedural rules; for example, purposefully failing to effect service of process. As a result of that particular tactic, the Company never made an appearance; therefore, it was unable to present any opposition to Falconer's motion for reinstatement. In other words, Falconer's misconduct prevented the Company from fully and fairly arguing its case. That argument comes now in the form of the Company's motion for reconsideration.

### A.    *"Dormancy" of the Cause*

The most obvious evidence contradicting Falconer's claim that "[t]here was effectively no further action taken on the cause" is his refiling of exactly the same complaint 60 days after it was dismissed from this Court, a fact which Falconer failed to disclose when seeking reinstatement. He now argues that this lack of disclosure was *not* an attempt to mislead the Court, reasoning that the Court "would have had routine and reasonable opportunity to be aware of the existence of a parallel suit." (Doc. 12 at 3). This argument is completely upside down. It is not the place of the Court to search for evidence outside the record; rather, it is the duty of the parties to present their positions with complete candor. In this case, because Falconer had neglected to serve the Company, his omission of material fact went unchallenged and, until now, uncorrected. Moreover, Falconer's lack of service on the Company is further evidence that, like the undisclosed refiling of his complaint, his failure to prosecute is not the result of mere neglect, but rather purposeful and culpable conduct.

This conclusion does not require guesswork, as Falconer and Barnes freely admit that their chosen strategy has been to delay all along. Falconer explains that he was "compelled— ready or not—to file his suit within 90 days of his receipt of the [EEOC] right-to-sue letter" and that his "actions, or lack of action, in the prosecution of the cause has been aimed at 'buying time.'" (Doc. 5 at 4-5). Falconer then concludes that "purposeful delay in the present factual context is a legitimate tool." (Doc. 5 at 5). Because Barnes drafted that argument, he naturally agrees with it, stating, "The overall objective of my actions, and I believe those of Falconer as well, has been to extend the pendency of the lawsuit…. My only motivation has been to gain … time." (Barnes Aff. ¶ 6). Consequently, Falconer decided not to comply with court orders, twice failing to appear at mandatory conferences, or the Federal Rules of Civil Procedure, failing for eight months to serve process on the Company.

Falconer continued his delaying tactics when he refiled the same complaint in Judge Ellison's court. In that case, Falconer again failed to serve process or prosecute the action in any other way, including paying his filing fee.

After Judge Ellison dismissed Falconer's case, Falconer resumed his delaying tactics in this Court. In his view, "because there had been no material change in his predicament since the time of the initial filing, there was no basis (and, thus, no urgency) for Falconer to file any motion to reinstate the first case in late 2011." (Doc. 12 at 3). Three-hundred sixty-four days after his case had been dismissed from this Court, however, Falconer suddenly felt some urgency to reinstate this action and filed his motion for reinstatement. This timing is not coincidental; in fact, it is further proof of culpable delay, for Falconer makes clear that he understands the consequence of waiting an additional day would be to lose his "excusable neglect" argument. (*See* Doc. 12 at 5-6) (discussing the heightened standard for Rule 60(b) motions submitted more

than one year after judgment); *see also Pioneer*, 507 U.S. at 393 ("[A] party who failed to take timely action due to 'excusable neglect' may not seek relief more than a year after the judgment by resorting to [Federal Rule of Civil Procedure 60(b)(6)].").

Given this sequence of events and Falconer's admission of intentional inaction, it is wholly inaccurate to state that this case has simply lain dormant. More precisely, it has been smothered under a strategy of delay, and under no circumstances could such delay constitute "excusable neglect."

### B.    Neither Excuse nor Neglect

Although Rule 60(b)(1) affords relief from judgments and orders in cases of excusable neglect, it is well established that this relief does not extend to cases of gross carelessness, ignorance of the rules, ignorance of the law, or even inadvertent mistake. *Pettle v. Bickham* (*In re Pettle*), 410 F.3d 189, 192 (5th Cir. 2005). Indeed, "Rule 60(b) relief will only be afforded in 'unique circumstances,' " and "a court would abuse its discretion if it were to reopen a case under Rule 60(b)(1) when the reason asserted as justifying relief is one attributable solely to counsel's carelessness with or misapprehension of the law or the applicable rules of court." *Edward H. Bohlin Co. v. Banning Co.*, 6 F.3d 350, 357 (5th Cir. 1993) (quoting *Pryor*, 769 F.2d at 287); *see also Halicki v. La. Casino Cruises, Inc.*, 151 F.3d 465, 470 (5th Cir. 1998) (holding that where procedural rules are unambiguous, a misinterpretation of such rules virtually never constitutes excusable neglect). These restrictions become even tighter where a party seeks relief from the result of his own voluntary actions. Thus, "failure to evaluate carefully the legal consequences of a chosen course of action provides no basis for relief from a judgment under Rule 60(b)(1)." *Pettle*, 410 F.3d at 192 (quoting *Nemaizer v. Baker*, 793 F.2d 58, 62 (2d Cir. 1986)) (internal quotation marks omitted).

In this case, Falconer sought relief from the natural consequence of his voluntary decision not to take action. Even after his case was dismissed for failure to prosecute, then dismissed for a second time, Falconer continued his dilatory ways, waiting an entire year before filing his motion for reinstatement. This delay does not accord with the requirements of Rule 60, which states that a 60(b) motion "must be made within a reasonable time—and for reasons (1), (2), and (3) no more than a year after the entry of the judgment or order." Fed. R. Civ. P. 60(c). In no way does this mean, as Falconer implies, that "a reasonable time" is defined as "a year." On the contrary, Rule 60(b)(1) motions must be made within a reasonable time *and* within a year, and satisfying one requirement does not automatically satisfy—or obviate the need to satisfy—the other. For example, under the circumstances in *Pryor*, the Fifth Circuit concluded that waiting three months proved too long:

> Even where there exist extraordinary circumstances which might justify granting Rule 60(b) relief, the Rule nonetheless requires that such motion be made "within a reasonable time." But where … the motion itself recites no acceptable excuse for counsel's failure to appear at a scheduled conference; where it fails to offer any legally sufficient excuse for its own lateness, the … "Motion to Retain" having been filed nearly three months after the dismissal of the suit; and where the … supporting memorandum (or motion) that purports to offer grounds of excusable neglect appropriate for Rule 60(b)(1) relief was filed yet another month later, we cannot conclude that such filings were themselves timely within the meaning of the Rule's requirement.

769 F.2d at 287-88. Falconer's lateness is even less reasonable in that it was carefully calculated to achieve the maximum amount of delay. According to Falconer, he became aware of the need to file a motion to reinstate this case "[w]ithin days of … filing" his *Falconer II* complaint on November 14, 2011, but "there was no basis (and, thus, no urgency)" to do so. (Doc. 12 at 3). Instead, as part of his admitted policy of purposeful delay, he waited one full year, thus satisfying one of the two Rule 60(c) requirements. But, as in *Pryor*, no acceptable or legally sufficient excuse has been offered to show that this year-long delay was reasonable, nor can one

be found in the record. In fact, the only excuse Falconer offers is his "desire to have the matter handled by [his preferred] attorney," who "has been unable to manage the case due to his temporary ineligibility to practice in this court." (Doc 5 at 4). This explanation does not qualify as the type of "unique circumstance" that Rule 60(b) is intended to address.

In *Pioneer*, the United States Supreme Court listed factors relevant to the determination of excusable neglect. 507 U.S. at 395. In this case, the majority of those factors weigh heavily against Falconer: he maximized the delay in proceedings (length); he did so only to serve the unremarkable goal of hiring his attorney of choice (reason)[1]; he completely controlled the pace of proceedings by willfully ignoring court orders and federal rules (control); and he did so specifically for the purpose of delay (good faith). In sum, these circumstances simply do not meet the legal standard of excusable neglect.

### C.      Pro Se or Not Pro Se?

The standard above is not lowered merely because the moving party is proceeding pro se, for although the pleadings submitted by such litigants are held to less stringent standards than those by licensed attorneys, *S.E.C. v. AMX, Int'l, Inc.*, 7 F.3d 71, 75 (5th Cir. 1993), this leniency does not extend so far as to excuse "[non]compliance with relevant rules of procedural and substantive law," *Yazdchi v. Am. Honda Fin. Corp.*, 217 F. App'x 299, 304 (5th Cir. 2007) (quoting *Hulsey v. Texas*, 929 F.2d 168, 171 (5th Cir. 1991)) (internal quotation marks omitted); *see also McNeil v. United States*, 508 U.S. 106, 113 (1993) ("[W]e have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel."); *Birl v. Estelle*, 660 F.2d 592, 593 (5th Cir. 1981) ("One who proceeds pro se with full knowledge and understanding of the risks involved acquires no

---

[1] Even if his case were to survive this motion, it appears that Falconer's goal would not be achieved. As of the date of this Order, Barnes is still ineligible to practice law in Texas.

greater rights than a litigant represented by a lawyer"; "[r]ather, such a litigant acquiesces in and subjects himself to the established rules of practice and procedure."). Moreover, where an ostensibly pro se litigant is actually prosecuting his case with the assistance of an attorney, there is even less cause for leniency. Such is the case here.

Falconer has signed each of his pleadings, including his sworn Motion for Reinstatement, as pro se. There are two troubling aspects of this claim: first, Falconer is, in fact, acting with the assistance of an attorney; second, that attorney, Barnes, is apparently licensed to practice law in the District of Columbia but suspended from practicing in Texas. As Barnes explains in his affidavit:

> I am currently a member of the Bar Association of the District of Columbia….
> Until March 2010, I was a member of the State Bar of Texas….
> ….
> I agreed to help [Falconer] with the drafting of an original complaint in his case. In fact, I did most of the drafting of the initial filing in order to assure some appropriate level of demonstrated competence in this court document…. Falconer signed the original complaint as a "pro se" plaintiff.

(Barnes Aff. ¶¶ 2, 5). Barnes' next explicit involvement with Falconer's claims comes in *Falconer II*, where the filing fee was submitted by a check in Barnes' name—a check that was subsequently returned for "nonsufficient funds." (Filing Fee Entry, *Falconer II*, No. H-11-3991). Then, upon reinstatement of this case, Barnes attended and participated in the January 17, 2013 conference before Magistrate Judge Frances Stacy. (Doc. 13 at 4). Even a cursory glance at Falconer's other pleadings suggests that this involvement has continued, though reaching such a finding is not necessary to decide the motion presently before the Court.[2] What is important is that Falconer has not, according to Barnes' sworn statement, acted without the assistance of an

---

[2] Although this Order dismisses Falconer's case, thereby preventing the possibility of further misconduct, it is worth noting that the procedural facts of this case raise serious questions regarding ghostwriting and the unauthorized practice of law. As a word of caution, such misconduct exposes both litigants and counsel to the possibility of sanctions, including fines, contempt, and professional discipline.

attorney; therefore, even if this situation warranted some degree of leniency toward pro se litigants, that standard would not apply to Falconer.

At the same time, Falconer is not merely the victim of an attorney's transgressions and, therefore, cannot ask for leniency on that ground. *See Raborn v. Inpatient Mgmt. Partners Inc.*, 278 F. App'x 402, 406 (5th Cir. 2008) ("Where the dismissal is ordered primarily in response to *counsel's* dereliction, we have stressed that alternatives to dismissal should be attempted first…. This is particularly true where … there is 'nothing whatever in the record to indicate that the [litigant] had any knowledge of, or participation in, any of the derelictions of his counsel.' " (emphasis in original; citations omitted)). In other words, by putting himself forth as pro se, Falconer cannot now argue that he was not himself culpable in flouting court orders and federal procedural rules and in misleading this Court by omitting material facts from his motion for reinstatement. Falconer was not, as he argues, "prevented … from actively prosecuting the case," (Doc. 12 at 2); instead, he intentionally pursued a strategy of delay. But for his failure to serve process on the Company—one of the delaying tactics employed as part of that strategy—his motion for reinstatement would not have gone unchallenged and, therefore, would never have succeeded. The Company's motion for reconsideration now allows that error to be remedied.

## IV.    Conclusion

For the foregoing reasons, it is hereby

**ORDERED** that Defendants' Motion to Reconsider Reinstatement of Case (Doc. 10) is **GRANTED** and Plaintiff's case is **DISMISSED**.

SIGNED at Houston, Texas, this 9th day of July, 2013.

_____
MELINDA HARMON
UNITED STATES DISTRICT JUDGE